**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| APRIL RANCATORE, wife of decedent, | ) | |
| JAMES MICHAEL RANCATORE, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14 cv 4241 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER, | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is plaintiff James Michael Rancatore, Sr.'s motion for summary judgment

[8] arising from the Commissioner of Social Security's decision to deny plaintiff's request for

disability insurance benefits.[1] Plaintiff seeks reversal of the Administrative Law Judge's ("ALJ")

determination that he is not disabled and entitled to benefits. For the reasons stated herein, this

Court grants the motion and remands the matter to the agency.

**Background**

The Court notes at the outset that James Rancatore committed suicide by hanging on

February 7, 2015. While the Court is sympathetic to Mr. Rancatore's wife and children, the ALJ did

not know at the time of his decision that Mr. Rancatore would commit suicide. Therefore, this

Court has been careful not to view the ALJ's decision with hindsight. Mr. Rancatore's death is a

---

[1] Plaintiff did not file a reply brief in support of the motion.

testament to the unpredictability of mental illness, and thus, the care with which the agency and the

courts must consider medical evidence and testimony relating to mental illness.

Rancatore was born on April 4, 1975, and was 35 years old at the onset date. His past

relevant work was as a rough carpenter and a pizza baker. Rancatore had a ninth grade education.

He filed an application for disability insurance benefits ("DIB") under §§ 216(i) and 223(d) of the

Social Security Act, alleging disability beginning December 1, 2010. The application was initially

denied on November 21, 2011. His motion for reconsideration was denied on February 10, 2012.

Rancatore filed a timely request on March 15, 2012, for a hearing with an ALJ. On February 23,

2013, ALJ Lovert F. Bassett held a hearing in Orland Park, Illinois. Rancatore was present and

represented by attorney Brianne Dotts. On March 5, 2013, ALJ Bassett issued his decision denying

Rancatore's application. Rancatore filed a timely request for review of the ALJ's decision before the

Appeals Council. On February 24, 2014, the Appeals Council denied the request for review. The

Appeals Council denied review again on March 14, 2014, after reviewing new evidence. Denial of

review by the Appeals Council made ALJ Bassett's decision the final determination of the

Commissioner. Pursuant to 42 U.S.C. § 405(g), Rancatore filed the complaint for judicial review now

before this Court.

*A. Relevant Medical History*

      *1. Progress notes from the McGrath Clinic:*

Rancatore regularly saw mental health professionals at the McGrath Clinic between 2009 and

2013. His diagnosis remained consistent as bipolar 2, most recent episode depressed, and

intermittent explosive disorder. He never exhibited any hallucinations, delusions, or other psychotic

processes. (A.R. 304-352). Between March and June 2009, Rancatore saw different treaters at

McGrath on six different occasions. On March 18, 2009, he reported some angry outbursts, but

impulsive behaviors were being displayed less frequently. On his next visit he reported being really

moody. The doctor noted that he was friendly, very animated, and anxious; that he was quite loud; excited, irritable, and over talkative. (A.R. at 143). He seemed to improve over the next couple of visits, but in September 2009, the psychiatrist noted that Rancatore was very clearly irritated and his impulse control had deteriorated. (A.R. at 143).

Between August 2011 and January 2013, Rancatore consistently saw Richard Adema, Licensed Clinical Professional Counselor ("Counselor Adema") and Dr. Rian Rowles, D.O. at MacGrath. On August 11, 2010, Counselor Adema, noted that they discussed dealing with symptoms of ADHD and impulsivity. Rancatore discussed interpersonal problems and substance abuse. He stopped taking Adderall because he did not like the side effects. He contacted his doctor who told him to increase (double) his bipolar medication to 300 mg a day. Rancatore reported feeling more stable and less angry. Counselor Adema encouraged ventilation and they discussed the sources of certain feelings.

On September 8, 2010, Dr. Rowles saw Rancatore and recorded no anxiety or symptoms of depression. He denied any suicidal ideation and assaultive or homicidal ideas or intentions. (A.R. at 308). Rancatore returned to the clinic on September 29, 2010, and saw Counselor Adema. They discussed ways of coping with depression, which was the main issue for the session. Rancatore also expressed feelings of anxiety and they discussed patterns of self-defeating behavior. Counselor Adema showed Rancatore patterns of maladaptive behavior. Counselor Adema also taught him some coping skills to reduce anxiety and manage depression. (A.R. at 307).

At his December 15, 2010, visit with Counselor Adema, Rancatore's history stated that he was "finding sobriety difficult. He said he is a more serious person, and not as fun. He is involved with his kids more with their homework and school. He said his anger is much more under control." (A.R. at 306). Counselor Adema encouraged Rancatore to "ventilate." He explored the sources and precipitants of certain feelings and behaviors with Rancatore. (*Id.*)

3

On May 18, 2011, Rancatore reported increasing his medication to 200 mg of lamictal twice a day and reported doing well. Examination revealed no serious mental status abnormalities. (A.R. at 305). On August 30, 2011, Dr. Rowles recorded that Rancatore was taking his medication and had been stable. Dr. Rowles' examination showed no serious mental status abnormalities. (A.R. at 304).

On December 28, 2011, Rancatore reported persisting symptoms. Dr. Rowles' notes indicate that, though Rancatore denied manic, obsessive, or persistent thoughts, he seemed more forgetful, was inattentive, had a short attention span, was disorganized, reported that his energy had decreased, he described difficulty concentrating and anhedonia. Dr. Rowles recorded his mental status as guarded, distracted, unhappy. Although suicidal and homicidal ideation was convincingly denied, signs of anxiety were noted. (A.R. at 331.)

On February 2, 2012, Rancatore reported that he could not tolerate the higher dose of Seroquel. Dr. Rowles noted that "Rancatore continues to be inattentive with a short attention span." He still does not seem to be listening when spoken to directly. He is disorganized and continues to be easily distracted. Symptoms of depression continue. Dr. Rowles recorded Rancatore's mental status as "irritable, distracted, unhappy." He appeared listless, anergic, and downcast. He also exhibited signs of anxiety. (A.R. at 332).

On November 20, 2012, Rancatore stated he was off his medication and was doing well. Dr. Rowles recorded that medication has been regularly taken and behavior has been stable and unremarkable.[2] Dr. Rowles further observed that Rancatore's mental status exhibited neither depression nor mood elevation nor anxiety. (A.R. at 351).

On January 18, 2013, Rancatore reported that his symptoms had returned, and he resumed medication but was still experiencing unstable moods. Dr. Rowles observed that Rancatore appeared

---

[2] The Court acknowledges an unexplained inconsistency in Dr. Rowles' progress from November 20, 2012.

irritable, looked unhappy and distracted. His affect was appropriate and congruent with mood, but there were signs of anxiety. "No suicidal ideas or intentions are present today." (A.R. at 352).

*2. Psychiatric / Psychological Impairment Questionnaire:*

Dr. Rowles provided a psychiatric/psychological impairment questionnaire. (A.R. at 343-350). He stated that he had been treating Rancatore since April 2010 with his most recent examination the same day as the questionnaire, January 18, 2013. He diagnosed Rancatore as suffering from bipolar disorder, anxiety, and ADHD. For the multiaxial evaluation[3], Dr. Rowles indicated:

> Axis I: Bipolar 2, most recent episode depressed, 296.55 (active);
> Axis II: Intermittent explosive disorder, 312.34 (active); ADHD 314.00;
> Axis III: none;
> Axis IV: severe;
> Axis V (current GAF): 35[4]
> Lowest GAF past year: 30

Dr. Rowles stated prognosis was "poor, chronic illness that has not been responsive to medications." (A.R. at 343). Rancatore's primary symptoms were emotional lability, irritability, poor impulse control, poor attention, poor concentration, and interpersonal conflict. Dr. Rowles reported that Rancatore's symptoms had never required hospitalization. (A.R. at 345).

He found Rancatore markedly limited in the following areas: ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain

---

[3] Axis I: clinical disorders and other conditions that may be a focus of clinical attention; Axis II: personality disorders and mental retardation; Axis III: general medical conditions; Axis IV: psychosocial and environmental problems; Axis V: global assessment of functioning. *see* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 27 (4th ed. 2000).

[4] The Global Assessment of Functioning, or "GAF," measures the severity of a patient's symptoms or level of functioning on a scale of 0 to 100. Although the American Psychiatric Association no longer uses this metric, *see* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013), the GAF was still in use when Dr. Rowles completed the questionnaire. The GAF Scale is divided into 10 ranges of functioning. DSM-IV-TR at 34. Range of 21-30: "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." *Id.* Range of 31-40: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.*

attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; the ability to respond appropriately to changes in the work setting; the ability to set realistic goals or make plans independently. (A.R. at 345-48). Dr. Rowles found Rancatore to be moderately impaired in the remaining criteria for a competitive work environment. *Id.* He noted that Rancatore's impairments were likely to produce "good days" and "bad days" and would likely result in more than three absences per month. (A.R. at 350).

*B. The March 5, 2013, Hearing before the ALJ*

On March 5, 2013, the ALJ held a hearing on the denial of disability benefits to Rancatore after finding that he was not disabled. Rancatore testified at the hearing and was represented by counsel. He testified to several primary areas of impairment: depression, anger and combativeness, self-harm and suicide attempts. Rancatore also testified to his work history and home life. A vocational expert, Brian Harmon, also testified at the hearing.

Rancatore testified that his last job was as a produce stocker for a grocery store in November 2010. He stated that the reason he left that job was that he felt "like he stood out too much," and the medication he was taking made him "a little loopy." (A.R. at 85). At the time he was taking Lamactal and Lamotrigine for bipolar disorder. (A.R. at 86). Prior to the grocery store, Rancatore worked at a pizzeria and a mini-mart. The longest he has ever kept a job was three years

and that was more than five years prior to the hearing. Rancatore testified that he usually quits, stating that he would "get mad or get fed up with something or somebody…". (A.R. at 88). He would "pick a few choice words and [he'd] warn them, and then after that maybe fight…". (A.R. at 89). He has "mood swings" where "one minute [he's] fine, then the next minute pick a few choice words." *Id.*

Rancatore told the ALJ that his depression caused him to shut himself off from everyone, including his children, and made him feel like he is a burden on everyone. He used to have hobbies and things he enjoyed doing, but that stopped about three years prior to the hearing. (A.R. at 90). When asked how he feels when he is depressed, Rancatore answered: "Changes, week to week, day to day, it always changes. I never feel the same way. There's no yes or no answers with me." Counsel then asked him about his sleep patterns and whether he naps during the day, to which Rancatore answered: "One week I'm fine, one week there's a lot of laying on the couch, and then the next week I find the energy here and there." (A.R. at 91).

Rancatore testified that he usually wakes up around 6:00 o'clock. His children were ten and six at the time of the hearing, and Rancatore testified that he makes sure they eat breakfast but that they are pretty good at getting up and ready by themselves. (A.R. at 92). After the kids leave for school he lies on the couch and thinks about "how much better they'd be off without [him]." He testified that, starting approximately five months before the hearing, three to four days a week were really bad. (A.R. at 93). Rancatore then testified to frequent suicidal ideation and several suicide attempts by pills and hanging. (A.R. at 94-95). Rancatore was then asked whether he had ever thought of harming other people. He responded yes and explained that he has threatened and hurt people, but that his medication helps. (A.R. at 96).

Rancatore the testified about his home and family life. He testified that he lives with his wife and two children but does not have any friends and does not socialize. (A.R. at 97). He takes a walk

once a week with his daughter in the evening. They go in the evening to avoid interacting with people. He does not grocery shop or go to church. *Id.* His wife makes all the decisions and takes care of family finances. (A.R. at 101-02). Rancatore does do some chores around the house but gets irritable and anxious if anyone disturbs his system for accomplishing those chores. (A.R. at 100).

The vocational expert, Brian Harmon, a certified rehabilitation counselor, also testified at the hearing and asked Rancatore some questions. Specifically, Harmon asked Rancatore about his work history as a rough carpenter from 2003 to 2007. That was non-union work constructing prefabricated buildings on site. (A.R. at 105). The ALJ asked Harmon whether any of Rancatore's past jobs required interaction with the public. The ALJ then posed the following hypothetical:

> Please consider a 37-year-old with a ninth-grade education who has a skilled work history, but for the purposes of our hypothetical profile no skills are transferrable to other occupations. This person's residual functional capacity contains no exertional limitations. And this individual is capable of understanding, remembering, and executing simple job instructions, which should not be required to have any interaction with the general public on behalf his employer and interaction with co-workers and supervisors should be limited to occasional, that means no more than one-third of an eight-hour work shift. And our hypothetical one should not [be] required to have to work in tandem in any joint projects with his fellow staff members.

(A.R. at 107). Harmon testified that the following jobs that fit the hypothetical were available in the area: kitchen helper, hand packager, and laundry worker. Rancatore's counsel asked Harmon about the interaction with co-workers that these jobs might have and asked about the absentee tolerance of these jobs. Harmon testified that "any absences in excess of one day per month would preclude employment." (A.R. at 114).

*C. The ALJ's Decision*

In his written decision, the ALJ found that Rancatore had the severe impairment of mood disorder. Next, the ALJ found that Rancatore does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404.1520(d), 404.1525, and 404.1526. He found only moderate restrictions or difficulties in the

activities of daily living, social functioning, and with regard to concentration, persistence, and pace.

The ALJ further found that Rancatore experienced no episodes of decompensation of extended

duration and was not psychiatrically hospitalized. Further, the ALJ found that Rancatore had the

residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with

the following nonexertional limitations: can understand, remember and carry out simple job

instructions; tolerate occasional interaction with co-workers and supervisors, but never the general

public; and should not be required to work on joint projects with fellow workers. Although the ALJ

found that Rancatore was unable to perform his past relevant work as a pizza maker or rough

carpenter, he found that jobs existed in the national economy that he could have performed.


**Legal Standard**

This Court will reverse the Commissioner's finding only if it is not supported by substantial

evidence or if it is the result of an error of law. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th

Cir. 2003). Substantial evidence means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although this Court reviews the record as a whole, it

cannot "substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the

evidence to decide whether a claimant is in fact disabled." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th

Cir. 2003); *Cass v. Shalala,* 8 F.3d 552, 555 (7th Cir. 1993). While the Court's review is deferential, it is

not intended to be a rubber-stamp the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869

(7th Cir. 2000).

In rendering a decision, the ALJ must build a logical bridge from the evidence to his

conclusion. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). "The ALJ need not, however,

provide a 'complete written evaluation of every piece of testimony and evidence.'" *Haynes v. Barnhart*,

416 F.3d 621, 626 (7th Cir. 2005) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). The ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F. 3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004).

**Discussion**

A person is disabled under the Social Security Act if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(I). The Social Security Administration has set forth a five-step sequential evaluation process for determining whether an individual is disabled (20 C.F.R. 404.1520(a)). The process of evaluation is as follows: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see* 20 C.F.R. § 404.1520.

Plaintiff makes three arguments for reversal of the ALJ's determination that Mr. Rancatore was not disabled. First, plaintiff argues that the ALJ failed to follow the treating physician rule and give controlling weight to Dr. Rowles' opinions as Rancatore's treating psychiatrist. Second, plaintiff contends that the ALJ's determination that his testimony was not entirely credible is erroneous. Third, the ALJ relied on flawed testimony from the vocational expert, Brian Harmon.

*1. Treating Physician Rule*

Plaintiff argues that the ALJ erred by failing to give controlling weight to Rancatore's psychiatrist, Dr. Regan Rowles, who had been treating him since April 27, 2010. A treating

physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *see* 20 C.F.R. § 404.1527(d)(2). When an ALJ declines to give controlling weight to a treating physician's opinion, he must provide a sound explanation for the rejection. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2010); *see also* 20 C.F.R. 404.1527(c)(2). "The court has explained time and again that 'a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition." *Nimmerrichter v. Colvin*, 4 F.Supp.3d 958, 970 (N.D. Ill. 2013) (citing *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). The ALJ concluded that Dr. Rowles' opinion was unpersuasive because it was not supported by Dr. Rowles' own clinical findings, but he failed to adequately explain his conclusion.

The ALJ seemed to be relying on his own perception of "what one would expect to see," without explaining a basis for his expectations. The ALJ also speculated that Dr. Rowles' opinion was based on sympathy rather than on his professional assessment of Rancatore. The ALJ further relied on Rancatore's daily activities to show that Dr. Rowles' conclusions were not supported by the record. The ALJ does not explain how the ability to carry out these daily activities contradicts Dr. Rowles' opinion regarding Rancatore's limitations or how being able to do those things relate to his ability to work. "An ALJ may consider a claimant's daily activities when assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence." *Jelinek*, 662 F.3d at 812. For example, this Court fails to see how Rancatore watching television reflects an inconsistency with his depression, when he clearly testified that he spends days on the couch watching television. Similarly, Rancatore's occasional ability to engage with his children or complete some household chores do not demonstrate an inconsistency with the medical record.

The ALJ ignored the treatment notes indicate that Rancatore had good days and bad days. The ALJ also failed to consider Counselor Adema teaching him coping skills for dealing with symptoms of depression or impulsivity, or where Rancatore reported feeling less angry or more controlled. The ALJ also ignored the notes from Dr. Rowles where Rancatore was exhibiting signs of depression and instead focused on a lack of instances of "mania." However, Rancatore's diagnosis was of Bipolar 2, not 1, which is characterized more by depression than hypomanic episodes. *See* DSM-IV at 345. An ALJ does not have to refer to every piece of evidence, but he cannot ignore evidence that his contrary to his conclusion. *Nimmerrichter*, 4 F.Supp.3d at 970 (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)). As the Seventh Circuit has stated:

> A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs is likely to have better days and worse days; that was true of the plaintiff in this case. Suppose that half the time she is well enough that she could work and half the time she is not. Then she could not hold down a full-time job.

*Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (the plaintiff was bipolar). Accordingly, this Court finds that the ALJ failed to adequately explain why Dr. Rowles' opinion as the primary treating physician was not entitled to controlling weight and build a logical bridge between the evidence and his conclusion.

*2. Credibility*

An ALJ's credibility finding will only be reversed if it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Credibility determinations are entitled to special deference, *Powers,* 207 F.3d at 435, however, "the reasons for the credibility finding must be grounded in evidence and articulated in the determination or decision." *Jones v. Colvin*, No. 12 C 10070, 2014 WL 2458155, at *10 (N.D. Ill. May 30, 2014) (Mason, M.J.).

Here, the ALJ enumerated several factors for finding Rancatore not credible. The ALJ found Rancatore's testimony that his mind wanders, he has difficulty making decisions, and worries about his financial situation, was contradicted by Rancatore's ability to care for his children, and "take care of the household without any assistance." (A.R. at 148). However, this conclusion is not grounded in evidence. In fact, the medical record substantiates Rancatore's testimony where on several occasions the progress notes indicate a lack of concentration, attention span, and disorganized thought. It is also not an accurate reflection of the testimony from Rancatore that his wife handles all the family finances and decision-making, and that the children get themselves ready in the morning. The ALJ also found incredible Rancatore's testimony about his suicidal ideation and attempts. While it is true that the hospitalization is not documented in the medical records, Dr. Rowles specifically noted on January 18, 2013, that: "No suicidal ideas or intentions are present today." (A.R. at 352). That note suggests that suicidal ideas or intentions were present on other days. Because the ALJ's interpretation of the records was at odds with the treating source statements, this Court finds that the ALJ's credibility determination was not grounded in evidence. *See Mason v. Barnhart*, 325 F.Supp.2d 885, 903-05 (N.D. Ill. 2004).

*3. Flawed Testimony of the Vocational Expert*

Lastly, plaintiff argues that the ALJ relied on flawed testimony from the vocational expert, Brian Harmon. This Court agrees that the hypothetical situation that the ALJ posed to Harmon failed to include all of the mental limitations contained in the record and gave too short shrift to his documented and uncontroverted inability to interact with other employees in a work setting. "When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record." *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). The ALJ must specifically "account for documented limitations of "concentration,

persistence or pace." *Id.* Here, the ALJ did not account for Rancatore's documented problems with concentration and attention span.

**Conclusion**

Based on the foregoing, this Court finds that the ALJ erred in his analysis of Rancatore's disability claim. The Court grants summary judgment [8] in favor of plaintiff and remands the matter to the agency.

IT IS SO ORDERED.

Date: 8/13/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge